Harriett C. SHERRILL et al., Appellees,

v.

Malcolm DEISENROTH, Jr., Appellant.

No. 47033.

Supreme Court of Oklahoma.

Oct. 7, 1975.

Boyd & Parks by John L. Boyd, Tulsa, for appellant.

Harrington & Mann, Howard, Rapp & Gaskill, Tulsa, for appellees, Harriett C. Sherrill and C. B. Sherrill.

Kay Wilson, Jr., Muskogee, for appellee, Steve Synar, Individually and as Trustee of the S. T. Synar Trust.

James Goodpaster, Tulsa, Special Commissioner appointed by the District Court of Tulsa County.

BARNES, Justice:

The controlling question in this appeal is when does the right of redemption in a resale tax sale cease to exist for the record owner of real property? The essential background facts are as hereinafter related.

Appellees had failed to pay general ad valorem taxes on their real property for the years 1967, 1968, 1969, and 1970. The property was sold by the County at tax resale on June 14, 1971, to Appellant, Malcolm Deisenroth, Jr.

The tax resale was conducted by the Tulsa County Treasurer in conformity with 68 O.S.1971 § 24329. On the aforementioned date, after the successful bid of Appellant and prior to the issuance of a resale tax deed, Appellee, C. B. Sherrill, acting for himself and other owners of the property (Appellees), paid to the Tulsa County Treasurer all delinquent taxes, penalties, and interest due and owing. In return, Appellee Sherrill received, not a tax receipt, but a money receipt. Simultaneously with said payment, Appellees instituted an action to immediately restrain and ultimately enjoin the Tulsa County Treasurer from issuing a resale tax deed to the property owned by Appellees prior to the tax sale. The Intervenor, Malcolm Deisenroth, Jr., Appellant herein, entered the action and filed a petition in the nature of a quiet title suit to have the court determine that the resale is valid, that he is the owner of the subject property, and that the Appellees, through prolonged failure to pay the taxes, have lost their interest therein.

Appellant contends a resale tax sale is complete when the auctioneer's hammer falls to conclude the bidding at the auction. He further contends that at that point the right of redemption ceases for the record owner and that the issuance of a deed thereafter is purely a ministerial act required to carry out the formalities of the sale.

On the other hand, Appellees argue the following: (1) that payment of delinquent taxes by the record owner of realty prior to execution of a tax deed by the County Treasurer constitutes redemption; (2) that the right of redemption ceases only upon the execution of a valid tax deed by the County Treasurer; and (3) that a landowner, not under a disability, has the right to redeem his land until the delivery of a tax deed by the County Treasurer.

The trial court granted the Appellees' Motion for Summary Judgment, finding that the owners of real property may redeem said property until such time as the County Treasurer has issued a resale tax deed therefor to the purchaser. The tax resale in question was held void, Appellees were declared owners in fee simple of the property, and the trial court ordered John F. Cantrell, Tulsa County Treasurer, to issue a Certificate of Redemption to Appellees. From such adverse ruling, Appellant appeals.

■ It is important to a thorough understanding of the case at bar to distinguish between the three levels of sale provided within the Oklahoma Statutes. The first level, commonly called the "Original Sale," is dealt with by 68 O.S. §§ 24311 to 24315. These sections provide that in all cases where taxes have become a lien upon real property and are unpaid on the first day of April of the following year, the County Treasurer shall sell the same to the County after appropriate statutory notice. This sale is not a sale in fact, but is merely a lien running in favor of the County.

Section 24316 to Section 24328 provide any tract sold to the County may thereaf-

ter be sold to an individual offering to pay taxes, interest, penalties, and costs. The person so purchasing receives a certificate and becomes a certificate holder.

For clarification, we set out in full the statute involved herein, 68 O.S.1971 § 24318:

"The owner of any real estate sold for taxes, or any person having a legal or equitable interest therein, may redeem the same from the lien resulting from tax sale at any time before the execution of a deed of conveyance therefor by the County Treasurer, by paying to the County Treasurer, if the tax sale certificate is held by an individual purchaser, the sum paid to the county for such certificate and all taxes paid and endorsed thereon, together with interest thereon at the rate of eight per cent per annum from the date of sale or purchase thereof from the county, and interest at the rate of eight per cent per annum on taxes endorsed on such certificate from date of each such endorsement, and in addition thereto costs provided in this Article, for the use of the owner of the certificate of such sale, and the County Treasurer shall hold the money paid to the order of such certificate owner, his agent, or attorney; and if the county is the holder of such tax lien, by paying to the County Treasurer the sum for which said property was sold with penalty at the rate of twelve per cent per annum and such additional costs as may have accrued; provided, that infants, idiots and insane persons may redeem from taxes any real property belonging to them within one year after the expiration of such disability, with interest and penalty at not more than ten per cent per annum. Upon such redemption, the County Treasurer shall enter the same upon the sales record, giving a receipt therefor to the person redeeming, file the duplicate with the County Clerk, and retain the triplicate in his office."

The second level, denominated the "Tax Resale," covered by 68 O.S. §§ 24329 to

24337, provides that if the real estate sold to the County remains unredeemed for a period of two years, the Treasurer is directed to sell said property on the second Monday of June each year. The statutes (24331) provide the necessary notice and the method of sale at "public auction to the highest bidder for cash."

It is not necessary to discuss the third level of sale, known as the "Commissioner's Sale," as it is not applicable to the facts in the instant case.

Appellant disputes the value of prior cases of this Court construing 68 O.S. § 24318. For reversal, he contends, among other things in substance, that these cases are inapplicable to the case herein as they hold deeds void because of some procedural failure of the County Treasurer or because the court improperly used or applied statutes dealing with levels of sales other than resales.

Appellant bases his right to recover upon the alleged error of this Court in the case of *Gilliland v. Shuman*, 197 Okl. 365, 170 P.2d 549, 166 ALR 850 (1946), which error he alleges was perpetuated by this Court in all subsequent cases. In *Gilliland*, supra, the property was sold to a purchaser at a resale tax sale, but the deed which had been prepared and signed was still in the possession of the County Treasurer when record owners of the property sought redemption by paying to the Treasurer all delinquent taxes. With regard to the rights of the record owners, this Court said in the syllabus:

"As between grantor and grantee, acts other than actual manual transfer of possession of deed may constitute delivery; but *where rights of third persons are involved, such as cutting off of right of redemption by execution of tax deed, nothing short of signing by grantor and delivery by him to grantee is sufficient to constitute execution of a deed*." (Emphasis ours)

Appellant asserts that 68 O.S.1941 § 433a (recodified in 1965 as § 24318),[1] cited by the Court in *Gilliland* as dealing with resales, has always been a section dealing with "Original Sales," not "Resales." Appellant correctly points out that the statutes deal with the levels of sale in their chronological order; first, the Original Sale, §§ 24311 to 24328; then the resale sections, 24329 to 24337; and, finally, the Commissioner's Sale, §§ 24338 to 24340.

Appellant urges as error that the Court in *Gilliland* misapplied the statute to the facts and that such a grievous error should not be further condoned and continued as "controlling precedent."

Appellant further contends there is no *express* provision allowing redemption in the sections dealing with resales except in § 24335 in favor of persons under a disability. We agree.

Appellant argues that had the Legislature intended to allow the same rules of redemption regarding resales as it did with reference to certificate deeds, it would have been a simple matter to so provide.

We believe Appellant's argument, that § 24335 is not applicable to resale redemption, is refuted by what this Court held in *Shores v. Berry*, 194 Okl. 458, 153 P.2d 94 (1944). In that case, involving a resale tax sale, § 433a was cited as authority for redemption, and this Court said:

"* * * While it is true, as argued by plaintiffs, that this section specifically mentions the owner of a tax sale certificate and does not mention the purchaser at a resale, *yet we think it is also applicable to property sold to individuals at resale, since we find no other statutory provision which expressly applies in such a situation*." (Emphasis ours)

*Shores*, supra, thus placed this Court of record in holding that Title 68 O.S.1941 § 433a, the forerunner of Title 68 O.S.1965 § 24318, was applicable to both certificate (original sale) and resale redemption.

---

1. 68 O.S.1965 § 24318 derived from 68 O.S.1941 § 433a. The tax statutes were recodified in 1965 and made no change.

Thereafter, this Court decided the case of *Thompson v. Kasner*, 205 Okl. 298, 237 P.2d 147 (1951), a case extremely close to the present fact situation, wherein a tax resale of the property in question was made on May 16, 1944, and on the same day, but after the sale and seven days prior to issuance of a resale deed to the plaintiff, the defendant delivered a letter and blank check to the County Treasurer to pay all taxes and assessments against the property in question. By inadvertence or oversight, the County Treasurer issued a resale tax deed to the plaintiff, and this Court therein noted the following:

"68 O.S.1941, § 433a, provides:—'The owner of any real estate sold for taxes, or any person having a legal or equitable interest therein, may redeem the same from the lien resulting from tax sale at any time before the execution of a deed of conveyance therefor by the county treasurer, * * *.'

"In *Shores v. Berry*, 194 Okl. 458, 153 P.2d 94, 95, in construing said section, this court said:—'While it is true, as argued by plaintiffs, that this section specifically mentions the owner of a tax sale certificate and does not mention the purchaser at a resale, yet we think it is also applicable to property sold to individuals at resale, since we find no other statutory provision which expressly applies in such a situation.' "

In support of their position, Appellees cite previous decisions of this Court, such as *Petrovics v. Brown*, 205 Okl. 116, 235 P.2d 708 (1951). In that case a resale tax deed was actually issued by the County Treasurer's office, with the defendant contending that the deed so issued was not valid on its face and therefore not sufficient, that he had the continued right of redemption, and that a proper tender and offer of redemption was made by the defendant. This Court held, in part:

"The rule has been established that until a resale tax deed, valid on its face, has been issued and delivered, the land-owner has the right to redeem from the tax sale and tax resale. See *Gulager v. Coon*, 93 Okl. 62, 218 P. 701; *Sharum v. Berd*, 96 Okl. 30, 220 P. 478; *Price v. Mahoney*, 175 Okl. 355, 53 P.2d 257, and *Ritzinger v. Monk*, 202 Okl. 228, 211 P. 2d 1020."

See also Kenyon, *Statutes of Oklahoma Tax Titles*, 8 Okl.L.Rev. 417, wherein it is stated:

"* * * The only period of redemption after a resale is whatever time happens to elapse before a deed is executed * * *."

■ The general rule which is to be followed in cases involving tax sales was set forth in *Price v. Mahoney*, 175 Okl. 355, 53 P.2d 257 (1953):

"* * * The taking of taxes, or the taxpayer's property for taxes, is an involuntary exaction by the state, and the tax-gathering authorities must stay strictly within the provisions of the law authorizing the collecting of such taxes or the taking of such property. Nothing is to be indulged in their favor, or in favor of grantees of property sold for taxes and undertaken to be conveyed by the tax-gathering authorities."

This Court has recognized that statutory provisions relating to redemption from tax sale must be construed liberally in favor of redemption. *Adams v. Rogers*, 158 Okl. 163, 13 P.2d 170 (1932). See also *Koehn v. Fluman*, 191 Okl. 71, 126 P.2d 1002 (1942).

■ If from the cases herein cited nothing is to be indulged in favor of the grantees of property sold for taxes, we find the issue before this Court can be answered directly by the case of *Price v. Mahoney*, supra, where the Court stated in its syllabus:

"The issuance of a tax deed fair on its face and based on proper jurisdictional prerequisites cuts off the right of redemption. * * *"

We conclude the removal of a citizen from his land by reason of tax delinquency is repugnant and offends the innate sense of justice in each citizen. The Legislature, recognizing this, established clear unequivocable guidelines in the disenfranchising process with liberal redemption rights allowed to the landowner. This Court, in following the legislative expression and intent, has held that the doctrine of "strictissimi juris" prevails and is applicable to tax resales. *Trappe v. Freeborn*, 288 P.2d 1105 (Okl.1955). See also *Lawrence v. Ayres*, 206 Okl. 218, 242 P.2d 142.

■ The issuance of a tax deed cannot be classed as a purely ministerial task following the sale as contended by the Appellant, for it is the final act of the statutory procedure of cutting a citizen off from his ownership in land for which the law, if the deed is valid, affords no relief.

In view of the Court's recognition that statutory provisions relating to redemption from tax sale must be construed liberally in favor of redemption by landowners and based upon public policy, we conclude that the court in the cases cited herein could have reached no other conclusion. Public policy favors redemption by payment of all delinquent taxes prior to the execution of a deed by the County Treasurer and is in accord with the clear guidelines established by the Legislature relating to the disenfranchising process.

■ We find the right of redemption of a landowner in a tax resale, not suffering from a statutory disability, ceases upon the execution of a valid tax deed by the County Treasurer.

■ We affirm the trial court's ruling in this matter that the Appellees herein did timely redeem their property and are entitled to a certificate of redemption as ordered by the trial court.

Affirmed.

All Justices concur.